IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNIVERSAL PRESERVACHEM, INC.,    )
                                 )
            Plaintiff,           )
                                 )
        v.                       )        1:24cv636
                                 )
DELL'S CHERRIES, LLC,            )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant's "Motion to Dismiss or, in the Alternative, to Transfer Venue for Forum Non Conveniens" (Docket Entry 11 (all-cap font omitted)) (the "instant Motion"). For the reasons that follow, the Court should grant in part and should deny in part the instant Motion.

## BACKGROUND

Universal Preservachem, Inc. (the "Plaintiff") "is a North Carolina corporation with its headquarters and principal place of business in Mebane, North Carolina" (Docket Entry 1, ¶ 6) that "imports, packages, distributes, and sells chemical ingredients for, inter alia, food manufacturers" (id., ¶ 1 (italics omitted)). Plaintiff has sued its former customer, Dell's Cherries, LLC (the "Defendant"), a "New York corporation with its headquarters and principal place of business in Brooklyn, New York" (id., ¶ 7), alleging breach of contract based on two purchase orders from June

and July, 2021. (See id., ¶¶ 12-15, 33-36.) As relevant to the instant Motion, the record reflects the following:

Within the regular course of business between the parties, Defendant submitted purchase orders to Plaintiff in June and July 2021 for delivery of goods to Defendant's New York facility. (See id., ¶¶ 12-15; Docket Entry 15-1, ¶¶ 5-6, 13.) Plaintiff "acknowledged [each] [p]urchase [o]rder" (Docket Entry 1, ¶¶ 13, 15; see also Docket Entry 15-1, ¶ 8) and provided Defendant with an estimated shipping date (see Docket Entry 1, ¶¶ 13, 15). The acknowledgments "clearly indicate[d] that [Plaintiff] is located at [a Mebane, North Carolina address]" (Docket Entry 15-1, ¶ 9) and "were emailed to [Defendant] by [Plaintiff's] Customer Service Representative . . ., whose email signature included th[at] Mebane address" (id.). The acknowledgments also stated that "the designated Free on Board ([']FOB[']) shipping point for the products . . . [wa]s Mebane, North Carolina." (Id., ¶ 12.) Further, "[a]t all relevant times, the email signatures of [Plaintiff's] employees reflected that [Plaintiff] was based in Mebane, North Carolina[, including the] employees who received and accepted the purchase orders, as well as those involved in facilitating the business relationship." (Id., ¶ 15.)

Pursuant to Defendant's foregoing purchase orders and associated acknowledgments, Plaintiff timely packaged Defendant's orders in Mebane and shipped them to Defendant's New York facility.

(See Docket Entry 1, ¶¶ 17-18, 20; Docket Entry 15-1, ¶ 13.) Following the shipment, Plaintiff sent Defendant an invoice for $60,610.00 for the first order, due on August 28, 2021 (see Docket Entry 1, ¶¶ 18-19; Docket Entry 12-1 at 2 (invoice)), and an invoice for $57,375.00 for the second order, due on August 2, 2021 (see Docket Entry 1, ¶¶ 20-21; Docket Entry 12-1 at 3 (invoice)). Defendant "claims that it remitted [the] payments . . . on September 17, 2021, and September 24, 2021, respectively." (Docket Entry 1, ¶ 27; see also Docket Entry 12-3 at 2-5 (Defendant's wire transfer confirmations for invoices dated September 17, 2021 and September 24, 2021).) Plaintiff, on the other hand, insists that it "never received the payments [Defendant] purports to have remitted" (Docket Entry 1, ¶ 27) and instead alleges that Defendant "may have . . . engage[d] with a phishing email . . . and submitted the purported payments to a third-party hacker" (id., ¶ 28).

Based on the purported nonpayment, Plaintiff filed the Complaint (Docket Entry 1) alleging that Defendant breached their contract. (See id., ¶¶ 32-36.) In response, Defendant filed the instant Motion, seeking dismissal of the Complaint for lack of personal jurisdiction or improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, transfer of this action to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). (See

3

Docket Entry 11 at 1.)[1]  To support the instant Motion, Defendant filed a declaration (Docket Entry 12), six exhibits (Docket Entries 12-1 - 12-6), and a memorandum (Docket Entry 13).  In opposition, Plaintiff filed a response (Docket Entry 15) and affidavit (Docket Entry 15-1), to which Defendant replied (Docket Entry 18).

## **DISCUSSION**

### **A.  Personal Jurisdiction**

Defendant first contends that "[t]he Court should dismiss [Plaintiff's] claims . . . pursuant to [Federal] Rule [of Civil Procedure] 12(b)(2) because it lacks personal jurisdiction over Defendant[]."  (Docket Entry 13 at 16.)  In response to a defendant's Rule 12(b)(2) challenge, the plaintiff must ultimately prove the existence of personal jurisdiction by a preponderance of the evidence.  See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).  If a court considers a pretrial personal jurisdiction challenge without conducting an evidentiary hearing, though, the plaintiff need only "mak[e] a prima facie showing in support of [the] assertion of jurisdiction."  Universal Leather, LLC v. Koro AR, S.A., 773 F.3d

---

1    In addition to those jurisdiction- and venue-related contentions, the instant Motion requests dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See id.)  Because "the Court [should] grant the [instant] Motion as to [Defendant's] request to transfer the case, it need not and [should] not address [that] argument[] for dismissal of the Complaint," Hunt v. Meta/Facebook, No. CV 23-3264, 2024 WL 1096758, at *3 (D. Md. Mar. 13, 2024).

553, 558 (4th Cir. 2014).  In such circumstances, the "[C]ourt must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  Id. (internal quotation marks omitted).  The Court must also construe all "conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff]."  Id. at 560.

The Court may exercise jurisdiction over Defendant if (1) North Carolina's long-arm statute authorizes it and (2) the exercise of jurisdiction comports with due process under the Fourteenth Amendment.  See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).  "A determination that the long-arm statute does not authorize jurisdiction ends the inquiry."  Stanton Barrett Motorsports, LLC v. Innovative Techs. Corp. of Am., No. COA 08-983, 195 N.C. App. 460, 673 S.E.2d 166 (table), 2009 WL 368577, at *2 (2009) (unpublished) (internal quotation marks omitted); see also Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 472 (M.D.N.C. 2013) (Eagles, J.) ("Absent any evidence that any defendant was engaged in solicitation or services activities at any point in North Carolina, the plaintiff's action is not authorized by North Carolina's long-arm statute.  Therefore, the Court lacks personal jurisdiction over the defendants and the action will be

dismissed.").[2]  As relevant here, North Carolina's long-arm statute provides that North Carolina courts possess jurisdiction over a defendant in any action which, inter alia, "[r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction . . . ."  N.C. Gen. Stat. § 1-75.4(5)(d).

When (as here)[3] the long-arm statute authorizes jurisdiction, the analysis turns to whether the exercise of jurisdiction comports with due process.  See IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 616 (M.D.N.C. 2012) (Schroeder, J.) ("In order for the exercise of personal jurisdiction to be proper, two conditions must be satisfied.  First, the forum state's long-arm statute must

---

2    Defendant argues that "because North Carolina's long-arm statute extends jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment, the two-step inquiry is really 'collapse[d] into a single inquiry as to whether the defendant [h]as such minimal contacts with the forum state that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  (Docket Entry 18 at 7 (quoting Christian Sci., 259 F.3d at 215 (some internal quotation marks omitted)).  However, since the decision cited by Defendant, the North Carolina Supreme Court has "emphasized that the two-step process is, in fact, a two-step process, and that jurisdiction under North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, must first be determined."  IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 616 (M.D.N.C. 2012) (Schroeder, J.) (citing Brown v. Ellis, 363 N.C. 360, 363, 678 S.E.2d 222, 223 (2009) (per curiam)).

3    The Complaint alleges that Plaintiff, a North Carolina corporation, shipped products from North Carolina to Defendants upon receiving Defendant's purchase order.  (See Docket Entry 1, ¶¶ 6-7, 12-20.)  Such allegations sufficiently satisfy Section 1-75.4(5)(d) of North Carolina's long-arm statute.

authorize the exercise of jurisdiction. Second, the exercise of personal jurisdiction must comply with the Due Process Clause of the United States Constitution." (internal citation omitted)). As to that second step, "[a] court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst, 334 F.3d at 397 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). To satisfy the minimum contacts test, the plaintiff must "show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (brackets in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). This test "ensure[s] that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts,'" id. (quoting Burger King, 471 U.S. at 475), and thus "protects a defendant from having to defend himself in a forum where he should not have anticipated being sued," id.

"In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotation marks

omitted).  Two methods for achieving personal jurisdiction exist: (1) "specific jurisdiction," in which the defendant's qualifying contacts with North Carolina constitute the basis for the litigation, and (2) "general jurisdiction," which occurs when a defendant's "affiliations with [North Carolina] are so 'continuous and systematic' as to render [it] essentially at home in [North Carolina]." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

For this action, Plaintiff relies on specific jurisdiction. (See Docket Entry 15 at 8.)  "In determining whether specific jurisdiction exists, [courts] consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst, 334 F.3d at 397.  When analyzing specific jurisdiction, a court must focus on the nature and quality of the defendant's contacts with the forum.  See id. Notably, however, a court "should not 'merely . . . count the contacts and quantitatively compare this case to other preceding cases.'  Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial

justice' is not thereby offended." Id. (ellipsis in original) (citation omitted).

"The purposeful-availment test is flexible, and [the] analysis proceeds on a case-by-case basis." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012). In the contractual context, purposeful availment occurs if "the contract has a substantial connection with the forum state. The parties' negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing, must be considered in determining whether the defendant purposefully established minimum contacts in the forum state." Tubular Textile Mach. & Compax Corp. v. Formosa Dyeing & Finishing, Inc., No. 4:96cv391, 1997 WL 33150812, at *4 (M.D.N.C. Jan. 29, 1997) (Beaty, J.) (citation omitted) (first citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957); then citing Burger King, 471 U.S. at 479). In particular, "[t]he [United States Court of Appeals for the] Fourth Circuit has emphasized the importance of the connection between the alleged wrongdoing and the conduct with the forum state," Protocol, LLC v. Henderson, 18 F. Supp. 3d 689, 702 (M.D.N.C. 2014) (Osteen, J.), as amended (May 15, 2014) (citing CEM Corp. v. Personal Chemistry, AB, 55 F. App'x. 621, 624-25 (4th Cir. 2003) and Vishay Intertech., Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1069 (4th Cir. 1982)), and "has given great weight to the question of who has initiated the contact between the parties,"

<u>Hanes Cos., Inc. v. Contractor's Source, Inc.</u>, No. 1:08CV334, 2008 WL 4533989, at *11 (M.D.N.C. Oct. 6, 2008) (Sharp, M.J.) (citing <u>Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners</u>, 229 F.3d 448, 451 (4th Cir. 2000)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Dec. 15, 2008) (Schroeder, J.).

Defendant contests personal jurisdiction on the second step of the inquiry. Specifically, Defendant asserts that it did not purposefully avail itself of the privilege of conducting business in North Carolina because, inter alia, "the parties' relationship consisted of purchasing materials in bulk at various times and [Defendant] did so only through limited email exchanges with representatives that may have resided in North Carolina." (Docket Entry 18 at 8.) Defendant further contends that its "only unsolicited contacts with North Carolina include the address on the [p]urchase [o]rders and certain communications with [Plaintiff's] accounts receivable department" (Docket Entry 13 at 20), and that "[p]urchase [o]rders and certain communications with a North Carolina[-]based representative will not confer personal jurisdiction" (<u>id.</u>).

As this Court (per Judge Osteen) has noted, "[a] common theme unifying [cases involving purchase orders where courts found personal jurisdiction] is that each claim arose from a breach of a purchase order sent into a forum state," <u>Protocol</u>, 18 F. Supp. 3d at 702 (discussing <u>McCoy Lumber Indus., Inc. v. Niedermeyer-Martin</u>

Co., 356 F. Supp. 1221, 1224-26 (M.D.N.C. 1973) (Gordon, C.J.);
Blue Ribbon Commodity Traders, Inc. v. Supermercados Mr. Special,
Inc., Civ. Action No. 07-4036, 2008 WL 2468381, at *5 (E.D. Pa.
June 18, 2008); and Lantor, Inc. v. Nicassio Corp., No. CA06 46S,
2007 WL 204015, at *7-9 (D.R.I. Jan. 24, 2007)), which highlights
"the importance of the connection between the alleged wrongdoing
and the conduct with the forum state," id. Additionally, in cases
where courts found no personal jurisdiction based on the defendant
sending purchase orders into the forum state, the courts emphasized
the fact that those defendants only connected with the forum state
due to the plaintiffs' unilateral actions. See, e.g., Amiad U.S.A,
Inc. v. Advanced Water Techs., Inc., No. 1:18CV520, 2019 WL
1359240, at *5 (M.D.N.C. Mar. 26, 2019) (Biggs, J.) (finding that
the defendant did not reach into forum state when placing purchase
orders pursuant to contractual relationship formed in another
state); Protocol, 18 F. Supp. 3d at 700-01 (same); Hanes, 2008 WL
4533989 at *11 (finding fact that third party outside forum state
initiated contact between the plaintiff and the defendant mitigated
against finding personal jurisdiction based on one purchase order).

Although Defendant's contacts with North Carolina may not have
extended beyond emailed purchase orders and related email
correspondence, the instant case arises from a breach of those very
purchase orders. (See Docket Entry 1, ¶ 33-36.) As Plaintiff also
notes, Defendant "understood . . . that the products [it ordered

11

from Plaintiff] would be packaged, prepared for distribution, and shipped from Mebane, North Carolina" (Docket Entry 15-1, ¶ 13). In addition, Defendant initiated contact with North Carolina by sending purchase orders to Plaintiff, the status of which, as a North Carolina corporation operating out of North Carolina, Defendant must have known based on the parties' previous dealings, Plaintiff's payment address, and Defendant's acceptance of liability for the goods upon their shipment from North Carolina. (See Docket Entry 15-1, ¶¶ 7-9 (stating that Defendant submitted purchase orders to Plaintiff's employee "based in Mebane, North Carolina, as indicated by his email signature," Plaintiff issued corresponding acknowledgments "from a[n ] employee based in Mebane, North Carolina," and those acknowledgments "clearly indicate[d] that [Plaintiff] is located at [a Mebane, North Carolina address]"), 12 ("[T]he designated Free on Board (FOB) shipping point for the products ordered by [Defendant] under [the purchase orders at issue wa]s Mebane, North Carolina").)

Given the "importance of the connection between the alleged wrongdoing and the conduct with the forum state," Protocol, 18 F. Supp. 3d at 702, and "who [] initiated the contact between the parties," Hanes, 2008 WL 4533989 at *11, Plaintiff has made a prima facie showing that Defendant purposefully availed itself of the privilege of conducting business in North Carolina for the purpose

of the transactions at issue.  Thus, this Court possesses personal
jurisdiction over Defendant.[4]

## B.  Venue

Alternatively, Defendant argues that, pursuant to Federal Rule
of Civil Procedure 12(b)(3), "the [C]ourt should dismiss this case
for improper venue" (Docket Entry 13 at 25).  To survive a motion
to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3),
Plaintiff need only make a prima facie showing of proper venue.
See Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir.
2012).  "In assessing whether there has been a prima facie venue
showing, [the court] view[s] the facts in the light most favorable
to the plaintiff."  Id.

To begin, venue exists in:

(1) a judicial district in which any defendant resides,
if all defendants are residents of the State in which the
district is located;

(2) a judicial district in which a substantial part of
the events or omissions giving rise to the claim
occurred . . .; or

(3) if there is no district in which an action may
otherwise be brought . . ., any judicial district in
which any defendant is subject to the court's personal
jurisdiction with respect to such action.

---

4    Defendant does not contest the additional due process
requirements for personal jurisdiction, namely, that Plaintiff's
claim arose out of Defendant's activities directed at the forum
state or that exercise of personal jurisdiction otherwise satisfies
constitutional reasonableness.  (See Docket Entry 13 at 19-20
(arguing only that "[Plaintiff] fails to establish that [Defendant]
has engaged in . . . purposeful availment").)

28 U.S.C. § 1391(b).  In the absence of proper venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Plaintiff maintains that "venue is proper in this Court pursuant to 28 U.S.C. [Section] 1391(b)(2)" (Docket Entry 15 at 17), which provides for venue where "a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2).  In determining whether a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district, Defendant contends that the Court should consider only the location of Defendant's alleged nonpayment because "the purported breach had nothing to do with [Plaintiff's] performance" (Docket Entry 18 at 15) and "a substantial part of the contract's performance does not equate to a substantial part of the events or omissions giving rise to the breach of contract claim" (id. at 14).  To the contrary, "in determining whether events or omissions are sufficiently substantial to support venue . . ., a court should not focus only on those matters that are in dispute or that directly led to the filing of the action."  Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004).  "Rather, it should review the entire sequence of events underlying the claim."  Id. (internal quotation marks omitted).  As relevant here, "[v]enue is appropriate in the forum where work for which payment is sought was completed."  Orbita

<u>Telecom SAC v. Juvare LLC</u>, 606 F. Supp. 3d 240, 246-47 n.2 (D. Md. 2022) (citing <u>Mitrano</u>, 377 F.3d at 405-06); <u>see also, e.g.,</u> <u>Mitrano</u>, 377 F.3d. at 405-06 (holding that plaintiff's work under contract at issue constituted a substantial part of events giving rise to claim).

Based on the entire sequence of events underlying Plaintiff's claim, Plaintiff correctly contends that "a substantial part of the performance under the relevant contracts occurred in Mebane, North Carolina." (Docket Entry 15 at 17.) First, as Plaintiff notes, the "relevant contracts - giving rise to this lawsuit - w[ere] created in Mebane, North Carolina" (<u>id.</u>), and, further, Plaintiff completed the work for which it seeks payment - namely, the "packag[ing], distribut[ion], and shipp[ing of the purchased products]" (<u>id.</u>) - in Mebane, North Carolina (<u>see</u> <u>id.</u>). Finally, Defendant "was to remit its payments to Mebane, North Carolina and . . . assumed the risks and liability of the purchased products upon shipment at Mebane, North Carolina." (<u>Id.</u>) Given that many of the events underlying the claim, and in particular Plaintiff's performance under the contracts at issue, occurred in this district, venue arises here and the Court should deny Defendant's motion to dismiss for improper venue.

C.  **Transfer**

Defendant lastly requests that, "[i]n the event that venue is satisfied, venue . . . be transferred to the United States District

Court for the Eastern District of New York pursuant to 28 U.S.C. [Section] 1404(a)" (Docket Entry 13 at 26). That statutory subsection provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Upon consideration of [a] motion to transfer venue, th[e] Court must make two inquiries: (1) whether [the plaintiff's] claims might have been brought in the [transferee court], and (2) whether the interest of justice and the convenience of the parties justify transfer to [such district]." LG Elecs., Inc. v. Advance Creative Comput. Corp., 131 F. Supp. 2d 804, 809 (E.D. Va. 2001). "The phrase 'where it might have been brought' in [S]ection 1404(a) refers to a forum where venue originally would have been proper for the claim and where a defendant originally would have been subject to personal jurisdiction." Kotsonis v. Superior Motor Express, 539 F. Supp. 642, 645 (M.D.N.C. 1982) (Ward, J.); see also Harman v. Pauley, 522 F. Supp. 1130, 1133 (S.D.W. Va. 1981) ("The transferee court must have or be able to obtain personal jurisdiction over the defendant; otherwise, the [c]ourt must find the transfer improper.").

As previously discussed, venue exists, inter alia, in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," 28

16

U.S.C. § 1391(b)(1), and "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .," id., § 1391(b)(2).  For venue purposes, a corporation resides "in any judicial district in which [it] is subject to the court's personal jurisdiction . . . ."  Id., § 1391(c)(2).  Regarding personal jurisdiction, "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (internal quotation marks, brackets, and ellipses removed).

Plaintiff disputes the propriety of venue in the Eastern District of New York pursuant to Section 1391(b)(2), contending that "[Defendant] wrongly asserts that a substantial part of the events giving rise to [Plaintiff's] claims occurred in New York" (Docket Entry 15 at 18-19).  However, the Court need not determine whether venue arises under Section 1391(b)(2).  As discussed, Section 1391(b)(1) provides for venue in "a judicial district in which any defendant resides," 28 U.S.C. § 1391(b)(1).  Defendant notes that its "principal place of business is in Brooklyn, and [it] is otherwise subject to personal jurisdiction in New York." (Docket Entry 13 at 27.)  Plaintiff does not contest this point; nor could it, as the Complaint alleges that "Defendant . . . is a New York corporation with its headquarters and principal place of business in Brooklyn, New York" (Docket Entry 1, ¶ 7).  Such

allegations sufficiently establish both that the United States District Court for the Eastern District of New York possesses personal jurisdiction over Defendant, and that Defendant resides in that district for venue purposes. Accordingly, the instant case "might have been brought," 28 U.S.C. § 1404(a), in the Eastern District of New York.

In light of that determination, the Court must determine "whether the interest of justice and the convenience of the parties justify transfer to [the Eastern District of New York]," LG Elecs., 131 F. Supp. 2d at 809. In making such a determination, courts weigh the following discretionary factors:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 802 (M.D.N.C. 2008) (Schroeder, J.) (quoting Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996) (Osteen, Sr., J.)). The movant bears the burden of proving that the balance of factors favors transfer, see id. at 803, and

"'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed,'" <u>Collins v. Straight, Inc.</u>, 748 F.2d 916, 921 (4th Cir. 1984) (brackets omitted) (quoting <u>Gulf Oil v. Gilbert</u>, 330 U.S. 501, 508 (1946)).

Defendant argues that "[t]he relevant discretionary factors . . . favor transfer" (Docket Entry 13 at 27), for the following reasons:

> [Defendant's] financial accounts, as a source of proof of payment, are located in New York; upon information and belief, all witnesses relevant to this dispute either reside in New York or New Jersey; judgment, if obtained, would be enforced in New York; North Carolina has no local interest since the conduct giving rise to the action did not occur in North Carolina; [and] there is no interest in applying substantive North Carolina law to [Plaintiff's] claim since the purported breach happened in New York.

(<u>Id.</u> at 27-28.)   Plaintiff, in contrast, fails to address the discretionary factors or argue why North Carolina would constitute a more convenient forum beyond its vague statement that "transferring venue would not serve the interest of justice" (Docket Entry 15 at 19).   (<u>See</u> <u>id.</u> at 18-19 (arguing only that proper venue does not exist in the Eastern District of New York).) Given Defendant's uncontested contentions regarding, inter alia, ease of access to sources of proof and potential witnesses, as well as the absence of any showing from Plaintiff that any relevant factors weigh against transfer, the Court should conclude that the balance of factors favors transfer.   <u>See</u> <u>Hill v. Carvana, LLC</u>, No. 1:22CV37, 2022 WL 1625020, at *5 (M.D.N.C. May 23, 2022) (Eagles,

19

J.) ("It is not the Court's job to undertake the analysis and legal research needed to support a perfunctory argument, nor should a party expect [the C]ourt to do the work that [the party] elected not to do." (internal citation and quotation marks omitted)). Accordingly, the Court should transfer this action to the Eastern District of New York.

## CONCLUSION

Plaintiff made a prima facie showing that Defendant purposefully availed itself of the privilege of conducting business in North Carolina, thus establishing that this Court possesses personal jurisdiction over Defendant. Additionally, Plaintiff sufficiently demonstrated that a substantial part of the events giving rise to its claim occurred in this district, making this Court a proper venue for the action. Finally, because the Eastern District of New York also possesses personal jurisdiction over Defendant and serves as a proper venue, and because Plaintiff failed to contest Defendant's showing as to the interest of justice and the convenience of the parties, the Court should transfer this action to the Eastern District of New York.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 11) be granted in part and denied in part as follows: the Motion should be denied as to Defendant's Rule 12(b)(2) and

12(b)(3) requests and should be granted as to Defendant's request
to transfer this action to the Eastern District of New York.

This 11th day of August, 2025.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

21